UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
BARBARA ZINNAMON,

                    Plaintiff,

  -against-

NYC DEPARTMENT OF SOCIAL SERVICES,

                    Defendant.
------------------------------------------------------------------ X

08-CV-5266 (ARR)(LB)

NOT FOR PRINT OR ELECTRONIC PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

    Plaintiff, Barbara J. Zinnamon,[1] proceeding pro se, brought suit against the New York City Human Resources Administration/Department of Social Services ("HRA")[2] alleging that she suffered employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, et seq. ("ADA"). (Am. Compl. at 1.) Defendant HRA moves for summary judgment dismissing plaintiff's complaint on the grounds that (1) plaintiff's complaint is time-barred and

---

[1] Plaintiff, Barbara J. Zinnamon, is familiar to this court, having commenced numerous employment discrimination actions in this district. See Zinnamon v. T-Mobile, No. 09-CV-3273 (ARR); Zinnamon v. NYS Dep't of Educ., No. 08-CV-5149 (ARR); Zinnamon v. NYC CCRB, No. 08-CV-2155 (ARR); Zinnamon v. Outstanding Bus Co., No. 08-CV-1787 (ARR); Zinnamon v. PCF Newspaper, No. 08-CV-1400 (ARR); Zinnamon v. NYC Dep't of Educ., No. 08-CV-1399 (ARR); Zinnamon v. Bridge Security, No. 08-CV-1398 (ARR).

[2] Plaintiff's initial and amended complaints name the "NYC Dept of Social Services" as the defendant in this action. (Compl. at 1; Am. Compl. at 1.) The proper name of the city agency is the New York City Human Resources Administration/Department of Social Services.

1

(2) plaintiff has failed to provide any evidence that she suffered discrimination. (Def.'s Mem. Supp. Summ. J. at 2.) Plaintiff has responded in opposition. For the reasons stated below, HRA's motion is granted.[3]

## BACKGROUND

Since May 1996, plaintiff has been enrolled in a cash assistance program administered by HRA. (Garcia Aff. ¶ 3, 13; Zinnamon Dep. at 55:13-22). The goal of the cash assistance program is to assist recipients to become self sufficient. (Garcia Aff. ¶ 4.) Cash assistance recipients considered employable are required to consult with HRA's vendors or contractual partners who assist them with job leads, resume writing, and other skills to gain employment. (Garcia Aff. ¶ 5.)

This action arises out of plaintiff's experiences with HRA's Work Experience Program ("WEP"), a program that places welfare recipients in temporary jobs. (Garcia Aff. ¶ 18.) According to the plaintiff:

> Well, okay, what you do when you go [to WEP] – they send you a letter and they tell you "we want you to come in for job placement," and to meet five hours per

---

[3] The court notes that plaintiff's submissions in this case are unorthodox. Her amended complaint consists of part of a standard complaint form for pro se litigants, followed by a letter from the pro se writ clerk of this court, followed by a "Combined Notice of Appeal and Motion for Extension of Time" for a decision allegedly rendered in this action on December 4, 2008 even though the initial complaint in this action was not filed until December 22, 2008. Also included in the amended complaint is a brief to the Second Circuit appealing this case and her son Dwight Davidson's nearly identical employment discrimination case, Davidson v. NYC Dep't of Soc. Servs., No. 08-CV-5261(ARR)(LB) (E.D.N.Y.). Because plaintiff is proceeding pro se, the court liberally construes her submissions. See Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). The court notes, however, that there is only one plaintiff in this action - Ms. Zinnamon. No facts or arguments pertaining to plaintiff's son's case will be considered in adjudicating this motion.

2

> week, so you go when they give you your appointment and you bring your paper in, and they say you need to speak to someone there.

(Zinnamon Dep. at 121:5-9.) Plaintiff claims that she utilized HRA's services for an extended period of time and remained unemployed. Thereafter, she brought suit claiming that HRA discriminated against her on the basis of her race, color, gender, religion, age, and disability when it failed to find her employment. (Compl. at 3; Zinnamon Dep.116:2-4 (testifying that she was "refused employment" from HRA)). Specifically, plaintiff's amended complaint provides:

> my facts on this discrimination of social services is that each time I have applied for employment I have been refused. Though they say you must work I seeked [sic] to have a job for a long period of time and I was not given an opportunity to do so.

(Am. Compl. at 6.) Plaintiff's initial complaint lists her race as black, her color as black, her gender as female, her religion as protestant, her age as forty-nine, and her disability as a heel spur and arthritis. (Compl. at 3.) Plaintiff later testified that she also suffers from spina bifida. (Zinnamon Dep. at 119:13-121:4.) Plaintiff filed a charge of discrimination with the EEOC, as required, on September 10, 2008. (Def.'s Mot. Supp. Summ. J. Ex. F at 1.)

Plaintiff's amended complaint alleges that the discrimination began in 1998 and continued through 2008. (Am. Compl. at 4.) Her initial complaint alleged that the discriminatory acts occurred between July 8, 2008 and December 2008, when she filed her complaint. (Compl. at 3.) In contrast, plaintiff testified that HRA has not discriminated against her since 2005.[4] (Zinnamon Dep. at 153:2-155:22.)

---

[4] Plaintiff also testified, earlier in her deposition, that the last act of discrimination by HRA occurred in 2004. See Zinnamon Dep. at 129:19-21 (Q: When was the last time [HRA] said they wouldn't employ you? A: 2004). It is immaterial to the statute of limitations issue whether the

3

Plaintiff testified that she is the victim of discrimination because she was repeatedly denied employment positions that were later offered to "foreigners" and people "other than black." (Zinnamon Dep. at 131:12-24, 146:12-24.) In an unsworn statement in her reply brief, plaintiff states that "there were many others that were hired for jobs of different religions and nationalities foreigners [sic]. We [plaintiff and her son] refused no jobs." (Pl.'s Opp'n to Summ. J. at 4.) Plaintiff testified that she knows the people who were hired instead of her were "foreigners" because she "hear[s] their talk all the time." (Zinnamon Dep. at 142:24-25.) She testified that "[y]ou can hear their accent." (Zinnamon Dep. at 131:24.) Plaintiff concedes, however, that at least some of the people hired in these jobs were black. (Zinnamon Dep. at 143:6-7, 146:18-24.)

Plaintiff testified both that she does not know the reason why she was unable to secure employment and that HRA never told her that she would not be employed because of any of her protected characteristics. (See Zinnamon Dep. at 127:18-128:9) ("Q: Did they give you a reason why they would not employ you? A: No. I don't even know the reason yet."). Furthermore, plaintiff testified that, among other activities, she currently volunteers for forty to forty-five hours per week for the New York State and City Departments of Education (Zinnamon Dep. at 56:8-65:12); operates her own printing business (Zinnamon Dep. at 65:13-67:11); teaches students who require home schooling (Zinnamon Dep. at 67:12-67:16); proctors exams for a GED program (Zinnamon Dep. 72:22-73:18); volunteers for thirty-five hours per week for the New York City Housing Authority (Zinnamon Dep. 81:17-82:10); and runs a security guard

---

last act of discrimination occurred in 2004 or 2005.

training school (Zinnamon Dep. 73:24-25, 76:21-81:6). During her deposition testimony, plaintiff acknowledged the possibility that she could have been denied employment opportunities because of her pre-existing commitments, asking defendant's attorney "[d]o you think [the trouble getting employment] could be because it's too much volunteer work, maybe, that's done?" (See Zinnamon Dep. 157:13-158:4.)

HRA contends that plaintiff never even sought employment at HRA or through HRA programs. (Def.'s Mem. Supp. Summ. J. at 5.) HRA argues further that even if plaintiff applied for jobs through HRA, she has provided no evidence of discrimination. (Def.'s Mem. Supp. Summ. J. at 11-12.) According to HRA, plaintiff remained unemployed because of her disregard for HRA's rules and procedures and not because of discrimination. (Def.'s Mem. Supp. Summ. J. at 12.) In support of its position, HRA relies on the sworn affidavit of Patricia Garcia, Executive Regional Manager for the Family Independence Program administered by HRA. Garcia asserts that plaintiff self-reported to HRA that she was unemployable, failed to comply with HRA's rules over 500 times by failing to appear for employment or work activity appointments, and failed to appear for an appointment with an HRA vendor that was going to provide plaintiff with a WEP assignment. (Garcia Aff. ¶¶ 9-19, 25.) Plaintiff herself admits in her deposition testimony that she missed appointments with HRA because of conflicting doctors' appointments, see Zinnamon Dep. at 123:19-125:6, and that, on at least one occasion, she declined job training from HRA because she felt she already had the necessary job training, see Zinnamon Dep. at 156:6-12.

# DISCUSSION

A. <u>Summary Judgment Standard</u>

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994). "'While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party . . . materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.'" <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (quoting <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotations omitted)). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

In addressing a motion for summary judgment, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." <u>Balderman v. U.S. Veterans Admin.</u>, 870 F.2d 57, 60 (2d Cir. 1989). Summary judgment should be granted "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party." <u>Cruden v. Bank of N.Y.</u>, 957 F.2d 961, 975 (2d Cir. 1992). The moving party bears the initial burden of demonstrating that no genuine factual dispute exists. See <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 202 (2d Cir. 1995). If the movant successfully shoulders its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."

Anderson, 477 U.S. at 250. "The nonmoving party must produce evidence in the record and 'may not simply rely on conclusory statements or on contentions that the affidavits supporting the motions are not credible.'" Jenkins v. New York State Banking Dep't, Nos. 07-CV-6322, 07-CV-11317, 2010 WL 2382417, at * 1 (S.D.N.Y. June 14, 2010) (quoting Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir. 1993)). Further, the evidence produced by the nonmoving party in opposition to summary judgment must "by affidavits or as otherwise provided . . . set out specific facts showing a genuine issue for trial" and must "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e)(1)-(2); see also Sarno v. Douglass Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999). Thus, the nonmoving party "must point to more than a 'scintilla' of supporting evidence to defeat summary judgment." Hargett v. Metro. Transp. Auth., No. 09-4044-CV, 2010 WL 2465544, at *1 (2d Cir. June 16, 2010) (citing Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008)). In addition, the court liberally reviews pro se submissions "to raise the strongest arguments that they suggest." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted).

B.     <u>Plaintiff's Claims are Time-Barred</u>

Claims of discrimination in violation of Title VII, the ADEA, and the ADA must be filed with the EEOC within 300 days of the alleged discriminatory conduct. See 29 U.S.C. § 626(d); 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); see also Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 327-29 (2d Cir. 1999) (holding that claims pursuant to both the ADA and the ADEA are subject to the 300 day limitations period); Raneri v. McCarey, No. 08-CV-1107, 2010 WL

1982963, at *3 (S.D.N.Y. May 13, 2010) ("Under both Title VII and the ADEA, a plaintiff must file a claim with the EEOC within 300 days after each alleged discriminatory incident before filing a lawsuit."). This statutory requirement is strictly enforced, even against pro se litigants. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); Heller v. Consol. Rail Corp., 331 F. App'x 766, 768 (2d Cir. 2009) (affirming district court's dismissal of pro se plaintiff's Title VII, ADA, and ADEA claims because plaintiff did not file with the EEOC within 300 days of alleged discriminatory acts); Rice v. Scudder Kemper Invs., Inc., No. 01-CV-7078, 2003 WL 1846934, at *3 (S.D.N.Y. Apr. 8, 2003) (holding that pro se plaintiff's Title VII and ADEA claims were time-barred because plaintiff did not file with the EEOC within 300 days of the alleged discriminatory acts). Plaintiff testified that she was last discriminated against by HRA in 2005. (Zinnamon Dep. at 155:11-22.) Plaintiff did not file her claims with the EEOC until September 10, 2008, which, according to plaintiff's testimony, is more than 300 days after any of the alleged acts of discrimination. Therefore, all of plaintiff's claims are time-barred.

### C. Plaintiff Lacks Sufficient Evidence to Survive a Motion for Summary Judgment

Even if plaintiff's claims were not time-barred, the court would grant HRA's motion for summary judgment because, on this record, no reasonable trier of fact could find that HRA discriminated against plaintiff based on race, color, gender, religion, age, or disability.

#### 1. Plaintiff's Title VII Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims under Title VII are evaluated by the three-part burden shifting analysis established in McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973). See, e.g., Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005). Plaintiff bears the initial burden of making out a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) she is competent to perform the job or is performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination. See, e.g., Mario v. P & C Food Markets, Inc., 313 F.3d 758, 767 (2d Cir. 2002). Plaintiff's burden of proof at this stage has been characterized as "'minimal' and 'de minimus,'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quoting Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001)), but "it is not non-existent," Almond v. Westchester County Dep't of Corr., 425 F. Supp. 2d 394, 399 (S.D.N.Y. 2006).

If plaintiff is able to make a prima facie case, the burden shifts to HRA to identify "'some legitimate, nondiscriminatory reason'" for its action. Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (quoting McDonnell Douglas, 411 U.S. at 802). If HRA meets this burden, the burden shifts back to the plaintiff to show that HRA's "reasons were 'false and that discrimination was the real reason.'" See Bryant v. Delphi Auto. Sys. Corp., No. 08-CV-6215, 2010 WL 1063740, at *6 (W.D.N.Y. March 22, 2010) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). Speculation and conclusory allegations of discrimination are not sufficient to meet this burden. Das v. Our Lady of Mercy Med. Ctr., No. 00-CV-2574, 2002 WL 826877, at *7 (S.D.N.Y. Apr. 30, 2002), aff'd, 56 F. App'x 12 (2d Cir. 2003). Instead,

9

plaintiff must come forward with "concrete particulars." R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984).

It is unlikely that plaintiff is able to make out a prima facie case of discrimination because she has not provided enough evidence that she is competent to perform any identified job or evidence showing an inference of discrimination. However, assuming, arguendo, that she is able to satisfy her initial burden, HRA's motion must be granted because plaintiff remains unable to satisfy the burden of showing that HRA's proffered reasons for its actions were false and the real reason for an adverse employment action was discrimination.

In response to plaintiff's discrimination allegations, HRA contends that plaintiff was unable to secure employment through HRA because plaintiff self-reported that she was unemployable, failed to comply with HRA rules and regulations over 500 times, and failed to appear at her WEP vendor. Def.'s Mem. Supp. Summ. J. at 12-13. In support of these assertions, HRA relies on Garcia's sworn affidavit, notices from HRA to plaintiff stating that she "willfully and without a good reason failed to comply with employment or training rules," HRA records indicating that plaintiff requested that HRA cease sending her appointment notices for job interviews and job training because plaintiff was "employed with the Board of Education," and plaintiff's own deposition testimony.

Plaintiff, in response, is unable to show that HRA's proffered explanations are pretextual and that the reason for any adverse employment actions is actually discrimination. Plaintiff's only admissible evidence is found in her deposition testimony, which is devoid of any concrete evidence of discrimination, and instead contains only speculation and conclusory allegations.

For example, when asked "[h]ow do you know [those hired were] foreigners," plaintiff responded, "[b]ecause I know foreigners when I see them." (Zinnamon Dep. at 116:24-25.) She later stated "I hear their talk all the time."[5] (Zinnamon Dep. at 131:24.) When pressed, plaintiff was unable to identify any individuals hired instead of her or to identify the nationalities of those allegedly hired, see Zinnamon Dep. at 116, and she conceded that at least some people hired were of the same race as plaintiff, see Zinnamon Dep at 143:5-7, 146:19-24. Plaintiff even admits in her deposition testimony that "I would have to be more detailed in explaining and pinpointing everything," see Zinnamon Dep. at 131, and that she "do[es] not even know the reason" she was denied employment, see Zinnamon Dep. at 127:24. As such, plaintiff's testimony is evidence of little more than plaintiff's "subjective belief that [s]he was not treated fairly" and "is simply not enough to demonstrate pretext." Bryant v. Delphi Auto. Sys. Corp., No. 08-CV-6215, 2010 WL 1063740, at *6 (W.D.N.Y. Mar. 22, 2010) (citing Silva v. Peninsula Hotel, 509 F. Supp. 2d 364, 386 (S.D.N.Y. 2007)).

2. Plaintiff's ADEA Claims

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §

---

[5] To the extent that plaintiff, by testifying that she "hear[s] their talk all the time" is suggesting that she has heard "foreigners" say they were hired in positions for which plaintiff had previously applied, plaintiff's deposition is inadmissible hearsay, and does not constitute competent evidence for the purposes of a summary judgment motion under Rule 56. See Sarno, 183 F.3d at 160. To the extent plaintiff meant that she can recognize the accents of people from other countries, her testimony raises no hearsay concerns.

11

623(a)(1). Claims under the ADEA, like claims under Title VII, are analyzed under the three-part burden shifting framework developed in McDonnell Douglas. See Cross, 417 F.3d at 248 (2d Cir. 2005) (applying the McDonnell Douglas burden shifting analysis to ADEA claims). However, since the recent Supreme Court decision in Gross v. FBL Financial Services, 129 S. Ct. 2343 (2009), after an employer proffers a legitimate, non-discriminatory reason for its employment decisions, ADEA plaintiffs are required to show that age discrimination was actually the but-for cause of the adverse employment action. Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (citing Gross, 129 S. Ct. 2343 at 2352). In contrast, claimants under Title VII need only show that age was a motivating factor. See Gross, 129 S. Ct. 2343 at 2349. For the same reasons that plaintiff is unable to prove pretext in the context of her Title VII claims, she cannot prove that discrimination was the but-for cause of any adverse employment action.

The only record evidence in support of plaintiff's allegation that HRA discriminated against her on the basis of her age is the following exchange during plaintiff's deposition:

> Q: Did there come a time between 1997 and now where you asked HRA to give you a position and they said no?
>
> A: Yes, between 1997 and 1998.
>
> Q: What happened then?
>
> A: I wanted to have security [job] again.
>
> Q: Through HRA?
>
> A: City of New York security.

> Q: And what happened?
>
> A: And I was refused.
>
> Q: Who got the job instead?
>
> A: Some other employees.
>
> Q: What did they look like?
>
> A: I mean other - they were young. They were young people. They were over 21 years old.

(Zinnamon Dep. at 140:19-141:8.) At no point during her testimony did plaintiff identify any younger individuals who were hired or identify the ages of those allegedly hired. Thus, as with plaintiff's Title VII claims, plaintiff failed to point to any "concrete particulars" as required to survive a motion for summary judgment, see R.G. Group, Inc., 751 F.2d at 77, and instead her testimony does little more than illustrate her subjective belief that she was not treated fairly. See Bryant, 2010 WL 1063740, at *6 (citing Silva, 509 F. Supp. 2d at 386). Thus, defendant's motion for summary judgment is granted.

3. Plaintiff's ADA Claims

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Claims under the ADA are also analyzed under the three-part burden shifting framework of McDonnell Douglas. See McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009). Therefore, a "plaintiff must establish a prima facie

case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse employment action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006)(internal quotations omitted).

To make a prima facie case under the ADA, plaintiff must show that (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with our without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of her disability or perceived disability. Kinneary v. City of N. Y., 601 F.3d 151, 155-56 (2d Cir. 2010).

HRA is entitled to summary judgment because plaintiff is unable to make out a prima facie case of discrimination under the ADA. Plaintiff provided insufficient evidence that she is a "qualified individual" with a "disability" within the meaning of the ADA. See 42 U.S.C. § 12112(a).[6] A plaintiff can demonstrate that she has a disability within the meaning of the ADA in any one of three ways. She can show that she (A) has a physical or mental impairment that "substantially limits" one or more "major life activities"; (B) has a "record of such an

---

[6] The ADA Amendments Act of 2008 ("ADAA"), which became effective on January 1, 2009, recently expanded the class of individuals entitled to protection under the ADA. The Second Circuit has held that the ADAA does not apply to conduct that occurred prior to the effective date of the statute. See, e.g., Ragusa v. Malverne Union Free Sch. Dist., No. 08-5367-CV, 2010 WL 2490966, at *1 n.2 (2d Cir. June 21, 2010) ("[W]e here apply the version of the statute in effect during the time period at issue, which ended with Ragusa's termination on June 30, 2005.").

impairment"; or (C) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). The statute defines major life activities as including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

To determine if an individual qualifies as disabled under the ADA, the Second Circuit applies the three-step approach taken by the Supreme Court in Bragdon v. Abbott, 52 U.S. 624 (1998). See Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 147 (2d Cir. 2002). Under this approach,

> plaintiff must first show that she suffers from a physical or mental impairment. Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a "major life activity." Third, the plaintiff must show that her impairment "substantially limits" the major life activity previously identified.

Id. (internal citations omitted). While plaintiff testified that she suffers from spina bifida and a heel spur and stated in her initial complaint that she suffers from arthritis, she has not identified any life activities that are impaired by these conditions. In fact, not only did plaintiff fail to identify a major life activity that was impaired and substantially limited, she also testified that she was able to perform considerable amounts of volunteer work every week despite her alleged disabilities. See Zinnamon Dep. at 56:8-65:12, 65:13-67:11, 67:12-67:16, 72:22-73:18, 73:24-25, 76:21-81:6, 119:22-120:4. Plaintiff never once alleged or testified that she is regarded as having a physical or mental impairment that substantially limits a major life activity or has a record of such an impairment. Thus, plaintiff failed to make out a prima facie case of

15

discrimination under the ADA.

## CONCLUSION

For the foregoing reasons, HRA's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in favor of the defendant and close the case.

SO ORDERED.

/Signed by Judge Ross/

Allyne R. Ross
United States District Judge

Dated: August 18, 2010
Brooklyn, New York

SERVICE LIST:

*Pro Se Plaintiff*
Barbara Zinnamon
345 Livonia Avenue Apt. 4F
Brooklyn, NY 11212

*Defendant's Attorney*
Jamie M. Zinaman, Esq.
New York City Law Department
100 Church Street
New York, NY 10007

cc: Magistrate Judge Lois Bloom

17